## CENTRAL POWER & LIGHT CO. v. MAURITZ et al.  (No. 9163.)

Court of Civil Appeals of Texas. Galveston. June 1, 1928.

1. **Eminent domain ☞223—Verdict in proceedings to condemn land for high-power transmission line held responsive to issues submitted.**

In proceedings to condemn land for construction and maintenance of high-power transmission line, verdict of jury that value of land was $60 per acre, and that damage on 314 acres was $3 per acre, *held* responsive to the issues submitted.

2. **Eminent domain ☞223—Jury's findings in proceedings to condemn land for transmission line held not too uncertain and indefinite to sustain judgment.**

In proceedings to condemn land for construction and maintenance of high-power transmission line, jury's findings that value of land was $60 per acre, and that damage on entire land of defendants was $3 per acre, *held* not too indefinite and uncertain to sustain judgment, since it can only be construed to mean that value of land taken was $60 per acre and that maintenance of line depreciated land not actually taken to extent of $3 per acre.

3. **Eminent domain ☞255—Condemner, neither pleading nor proving quantity of land required, cannot complain that judgment does not specify quantity.**

Where condemner neither pleaded nor proved quantity of land required by it for right of way purposes and such issue was not submitted nor requested to be submitted to jury, condemner cannot complain that judgment does not condemn any specified quantity of land.

4. **Eminent domain ☞262(5)—Failure of verdict and evidence in condemnation proceedings to definitely show quantity of land actually taken held not to have injured condemner.**

In proceedings to condemn land for high-power transmission line in so far as amount awarded landowner as damages is concerned, failure of verdict and evidence to definitely show quantity of land actually taken *held* not to have injured condemner.

5. **Eminent domain ☞262(5)—Discrepancy of four cents between verdict of jury and judgment rendered thereon is regarded as de minimis.**

Discrepancy of four cents between amount of damages found by jury in condemnation proceedings and judgment rendered on verdict must be regarded as de minimis, and, where judgment was for an amount less than verdict, condemner cannot complain.

6. **Evidence ☞471(4)—In proceedings to condemn land for transmission line, testimony that prospective customers objected to presence of line because of supposed danger to nearby buildings held not conclusion.**

In proceeding to condemn land for high-power transmission line, testimony that prospective customers for land objected to presence thereon of a high-power line because of supposed danger of such line to nearby buildings *held* properly admitted; it not being a conclusion of witness, but statement of fact, and, though danger was not real, fear of prospective customers might affect market value of land.

7. **Eminent domain ☞203(1)—In proceedings to condemn land for power transmission line, testimony that noise caused by line prevented use of telephone by witness held improperly admitted.**

In proceedings to condemn land for high-power transmission line, admission of testimony of witness that noise caused by high-power line prevented use of telephone line over which he tried to talk *held* error, since even if injury to landowner's telephone line was element of damages recoverable, such injury could not be shown by testimony that some other telephone line was injured without showing relative distance of landowner's telephone line and other telephone line from high-power line.

8. **Eminent domain ☞195—In proceedings to condemn land for transmission line, cost of removing landowners' telephone to avoid interference with its use held not recoverable in absence of pleading thereof.**

In proceedings to condemn land for high-power transmission line, landowners were not entitled to recover cost of removing telephone line to avoid interference with its use caused by high-power line, in absence of any pleading by landowners claiming damages to their telephone line.

9. **Eminent domain ☞219—Granting defendants right to open and close held error, where defendants did not admit condemner's right to condemn land (Rule 31 for District and County Courts).**

In condemnation proceedings, where defendants did not admit condemner's right to condemn land as required by Rule 31 for Trials in District and County Courts, *held*, that granting of defendants' request to be permitted to open and close argument to jury was error.

Appeal from Jackson County Court; John T. Vance, Judge.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Condemnation proceedings by the Central Power & Light Company against T. N. Mauritz and others. From judgment awarding defendants a certain sum as full compensation for damages caused, the condemner appeals. Reversed and remanded.

Geo. P. Willis, of El Campo, and Rose & Sample, of Edna, for appellant.

PLEASANTS, C. J. This appeal is from a judgment in the court below, rendered in a condemnation proceeding, by which appellees were awarded the sum of $941.96 as full compensation for damages caused them by the construction and maintenance by appellant of a high-power transmission and distributing electric line across appellees' lands.

The judgment was rendered upon the verdict of a jury on special issues submitted by the trial court.

The lands of apellees over which appellant sought to condemn a right of way for its electric power line consists of two tracts, one containing 168.35 acres and the other 146.4 acres. Both tracts, which are described by metes and bounds in the petition, while not contiguous, are out of the same original survey and are bounded on the southeast by the Ganado Wharton public road in Jackson county.

The land sought to be taken is not described in the petition further than to designate a beginning point for the transmission line and the course and distance of the line.

The cause reached the court below by appeal of appellant from the award of commissioners apointed by the county judge to assess appellees' damages. No pleadings were filed by appellees other than a waiver of citation and enter of appearance.

The only issues submitted to the jury were the value of the land taken by appellant and the damage, if any, to the remainder of appellees' land caused by the construction and maintenance of appellant's line.

In deciding these issues the jury found, "Value the land at $60 per acre" and "damage on the 314 acres, $3 per acre." Upon return of this verdict the court rendered a judgment in favor of appellees for $941.96 as damages found by the jury "in full compensation" for the erection and maintenance of appellant's electric line over the lands of appellees described in the petition for the condemnation, and further "adjudged and decreed that said portions of said above-described lands upon which said transmission line is now constructed are hereby condemned as a perpetual easement in behalf of said Central Power & Light Company for the purposes above mentioned as long as the same is so used by it, and that said Central Power & Light Company shall have the right of ingress and egress to said tracts of land for the purpose of doing any and all necessary work for the operation and maintenance of said transmission line."

[1] Appellant, under appropriate assignments and propositions, very earnestly contends that the judgment should be reversed on the ground that the verdict of the jury is not responsive to the issues submitted and is too indefinite and uncertain to sustain the judgment.

The issues submitted to the jury were these:

"First Special Issue. What was the market value of the land actually appropriated by plaintiff for the erection and maintenance of its transmission line at the time of the erection of such line?

"Special Issue No. 2. Did the erection and proposed maintenance of such transmission line cause any decrease in the market value of the lands of defendants described in the petition other than the land actually taken?

"If you answer the foregoing special issue No. 2 in the negative, you need not answer the next following special issue, but if you answer it in the affirmative then you will also answer the following:

"Special Issue No. 3. What was the amount of the depreciation in the market value of the defendants' said lands other than the lands actually appropriated by plaintiff by reason of the erection, and proposed maintenance of said transmission line?"

The jury returned the following verdict:

"1. To the first special issue, we, the jury, answer: Value the land at $60 per acre.

"2. To the second special issue we answer: We, the jury, consider the damage on the 314 acres, $3 per acre.

"3. To the third special issue, we answer: _____ J. W. Chapman, Foreman."

This verdict is not irresponsive to the issues submitted.

The first answer is a direct reply to the first question propounded.

The second answer is responsive to and fully answers the second and third questions propounded. It is not material that these questions were not answered separately.

[2] The findings of the jury cannot possibly be misunderstood, and can only be construed to mean that the value of appellees' land taken by appellant was $60 per acre, and that the maintenance of appellant's line depreciated the value of 314 acres of appellees' land not actually taken to the extent of $3 per acre. Appellant neither pleaded nor proved the quantity of land required by it for right of way purposes, and that issue was not submitted nor requested to be submitted to the jury. The judgment does not condemn any specified quantity of land, but only those portions of the lands described in the petition "upon which said transmission line is now constructed."

[3] Appellant does not complain, and is in no position to complain, of this portion of the judgment, because it is as definite and certain as appellant's pleadings and evidence as to the quantity of land actually taken.

There was no exception to the petition, and

both parties appear to be satisfied with the condemnation portions of the judgment.

[4, 5] In so far as the amount awarded appellees by the judgment is concerned, the failure of the verdict and the evidence to definitely show the quantity of land actually taken by appellant could not possibly have injured appellant. The two tracts of land over which the right of way was condemned contain 314.39 acres. The verdict gave appellees $3 per acre damages on 314 acres of the land not actually taken. This only leaves $\frac{39}{100}$ of an acre for the land actually taken. Since the land taken was worth $60 an acre and the remaining land was only damaged to the extent of $3 per acre, it goes without saying that if the quantity taken was more than $\frac{39}{100}$ of an acre, appellees would have been entitled to a larger compensation, and appellant will not be heard to complain if required by the verdict and judgment to pay $3 an acre for land taken which the jury finds was worth $60 per acre. The discrepancy of 4 cents between the amount of damages found by the jury and the judgment rendered on the verdict must be regarded as de minimis, and in addition to this, the judgment being for an amount less than that found by the verdict, appellant cannot complain.

Appellant also complains of the rulings of the court upon objections to evidence offered by appellees upon the issue of damages to the two tracts of land caused by the maintenance of appellant's electric line. We shall not discuss in detail all of the several rulings on the admission of evidence complained of by appellant.

[6] F. H. Knipling, a witness for appellees, testified:

"The nationality that we are selling mostly to are Bohemians. This line that runs along the southern part of Mauritz land is in front of two residences, which decreases the sale value of the property. I have been selling real estate to those people for about 15 years, and from the experience I have had in the 15 years I know pretty well the objections that the people who buy land in that community have to a high line running along in front of their residences. They object to having the high line running in front of their homes on account of the danger; that is, as far as the house is concerned. I have never shown these two particular tracts of land to Bohemian prospective purchasers. We have many Bohemian people living in the city of Ganado owning property there, and some buying property in Ganado since this high-power line was built. They buy and move into the town notwithstanding the high-power line."

Mr. T. N. Mauritz testified for appellees as follows:

"This property has decreased by reason of the high-power line passing over it, because of the danger of the high-power line. I have had that objection made to me, before and after the erection of the line, in the sale of this property. I said a few minutes ago that the people being afraid of this high-power line had decreased the market value of this land $5 or $10 an acre."

This testimony was objected to by the appellant on the ground that the witnesses "were merely stating their conclusions as to the mental attitude and reasons in the minds of others about which they could not know." We do not think the trial court erred in not sustaining this objection to the evidence. The statement that prospective customers for the land objected to the presence thereon of a high-power electric transmission line because of the supposed danger of such line to nearby buildings was not a conclusion of the witness, but the statement of a fact. It may be that such danger was not real and the apprehension of prospective purchasers was unfounded, and yet such fear might affect the market value of the land.

[7] T. N. Mauritz further testified, in substance, that the day before the trial of the cause in the court below he tried to talk from the town of Ganado over a telephone line which he was told ran near appellant's high-power line, and that the noise caused by the high-power line prevented the use of the line over which he tried to talk. This testimony was objected to on the ground that it did not show the relative locations of the line over which the witness talked and the high-power transmission line which caused the noise. The purpose and materiality of the testimony is not shown by the bill of exceptions, but from the statement made in appellant's brief it appears that the testimony was offered in corroboration of other testimony of appellees to the effect that the construction of appellant's line necessitated the removal by appellees of a private telephone line on their land which ran parallel and near appellant's line, and that the removal of their line would cost appellees several hundred dollars. The objections to the testimony should have been sustained. Conceding, for the sake of argument, that injury to appellees' telephone line was an element of damage recoverable in this case, such injury could not be shown by testimony that some other telephone line was injured by the construction and maintenance near it of appellant's transmission line without showing the relative distance of appellees' line and the other telephone line from appellant's line. 22 Corpus Juris, 743–755, and 758.

[8] Appellant further objected to testimony by appellees as to the cost of removing their telephone to avoid the interference with its use caused by appellant's line. In the absence of any pleading by appellees claiming damages to their telephone line, such damages were not recoverable. Under the pleadings in this case appellees' recovery was limited to the value of the land actually taken by the appellant, and to damage caused the remainder of the land by the maintenance of appellant's line, and if damage to the telephone line can be regarded as damage to the

land, the measure of such damage was the difference between the value of the land before and after the injury to the telephone line, and not the cost of removing the line.

[9] After the evidence had been introduced, the appellees requested the court to be permitted to open and close the argument to the jury. This request was granted, over appellant's objection that no admission of appellant's right to condemn the land had been made by appellees as required by Rule 31 for Trials in District and County Courts. The record shows that no admission as required by this rule was entered of record. It is well settled by our decisions that such admission must be made before the evidence is introduced, to entitle a defendant to open and close the argument to the jury. City of San Antonio v. Fike (Tex. Civ. App.) 211 S. W. 639.

The right to open and close the argument to the jury is a substantial right of a plaintiff, and refusal of such right, especially in a case like the present in which there was sharp conflict in the evidence, was a material injury.

If other errors are shown, they are not such as are likely to occur upon another trial, and the remaining propositions need not be discussed.

For the reasons indicated the judgment is reversed and the cause remanded.

Reversed and remanded.